Good morning, Your Honors. May it please the Court, my name is Kelly Politte and I represent Robert Politte in this appeal. Okay, so Politte, that's how we pronounce it. Politte. This morning I will be addressing one issue that pertains to all three appellants. Robert McGuire, TRKSS's attorney, will address issues that pertain to Joan Politte and TRKSS. Our side would like to reserve a total of six minutes for rebuttal. Okay, keep your eye on the clock. It counts down. Absolutely. As you've noticed, I tended to be fairly indulgent, but I'm more indulgent with law students than I am with lawyers. I understand. This case is about whether Robert Politte, Joan Politte, and TRKSS LLC should be held liable for the unpaid employment taxes of RAJMP, Inc., a corporate taxpayer, when they had no knowledge of those unpaid taxes and, in fact, were themselves victims of the fraud perpetrated by RAJMP's chief financial officer against them and the IRS. Under the controlling principles and their application to the facts, it is against equity and fairness to hold these parties who knew nothing about the fraud liable for these taxes. The district court erred as a matter of law in holding the second prong of the Alter Ego test, the inequitable result prong, was met. There are two reasons why the district court erred. First, the district court erred in holding that unpaid taxes satisfied the second prong. And second, given the district court's findings that appellants had no knowledge of the unpaid taxes, it was error to conclude the second prong was met. The applicable standard of review is de novo, and if this court adopts the position that the district court erred as a matter of law, it should reverse the case and remand with instructions to enter judgment in favor of each of the appellants. First, I would like to emphasize the following before I get into my discussion. It comes down to this inequitable result and the determination that the failure to pay U.S. government income tax itself constitutes an inequitable result. But if this court indicates that that is an erroneous conclusion of law but otherwise finds the findings of fact supported in the record, then can the court uphold on a different basis that the inequitable result? Is there latitude for the court to do that? In general and other alter ego cases, that may be the case. But that gets into the second reason the district court erred is even if the court does agree that the unpaid taxes do not satisfy the second prong, the appellant's lack of knowledge precludes the second prong in this case from being met. And that is given that California alter ego law requires bad faith fraud or conduct amounting to bad faith where specific findings of bad faith are brought to light. Specter fraud. Yes, specter fraud was recognized. That doesn't necessarily require knowledge, does it, on an inequitable result? Knowledge on the inequitable result, it does require – no court has said that knowledge per se is required, but courts have indicated that knowledge or conscious acts by the purported alter egos with respect to the inequitable result are required. So to the extent that the knowledge of the unpaid liability in each and every single California alter ego case, there has been knowledge of the underlying liability or knowledge of the inequities that are being imposed. And here we have a disconnect. The CFO of the corporation completely deceived the shareholders, the management team, and outside accountants by falsifying financial records and accounting records to show the taxes were paid, to show that there was equity in the corporation, to show that the corporation was completely profitable at all times. The corporation existed, you know, in good standing at all times. It paid taxes. Its shareholders paid taxes. Just out of curiosity, was the CFO ever prosecuted for any of this? To my knowledge, the United States government has not gone after the CFO. How about the State of California? The State of California, I'm not aware. There was no fraud against the State of California, though, so I don't imagine that would be the case anyway. Because all California taxes were, in fact, paid, including California employment taxes. Right, but California could go after him if they thought that he had engaged in a more widespread fraud with respect to the corporation. Correct, correct. And I'm not even aware that the State of California has done that, and I don't believe that the United States government has gone after the CFO for his fraud. Now, you say as if it were an established fact that the actions of Mr. Evans were fraudulent with respect to the taxpayers. Is that established, or is it something that you wanted to establish but the district court wouldn't let the evidence in? It's a combination of both. So Richard Evans' actions, it was established at trial, and the record does reflect it, and multiple testimony of the witnesses and exhibits that Richard Evans falsified financial statements and concealed the tax liabilities. Right, but the question I'm asking is how about did the owners, did the police know this? I know they contended that they did not know this. Were they allowed to establish that at trial? No. The district court did preclude that evidence. So in terms of what the record we have in front of us is, we don't know. Well, I should say, even though the district court held that the knowledge was not allowed, and the district court did let facts in, such as testimony that the records were falsified. So it's kind of contrary ruling by the district court saying they couldn't establish things. My question is not whether the records were falsified. My question is whether or not we know that the owners of the company, Joan and Robert, I know there are other owners, but I'm particularly interested in Joan and Robert because they're the people in front of us, whether they knew of the falsification. And my understanding of the record is that the district judge did not allow evidence in on that point. So along those lines, the district court had ruled that such evidence should not be allowed in. Some of it still did get in. For instance, Richard Evans' affidavit, which was authenticated at trial, saying that he never told any of these people and they never knew. Ted Polite testified at trial, and Richard Evans testified as a falsification of financials. And Robert Polite himself testified. Ted Polite's testimony is as to what Evans told him, right? Yes, and he also testified as what the financial records showed. But I'm just trying to make sure this is what we know and don't know from the record in front of us and from findings by the district judge. I regard it as not established by the record that Joan and Robert knew or didn't know. Okay, and Robert did testify he did not know, and then he was cut off by the court thereafter. So along those lines, California alter ego doctrine does require acts on behalf of the purported alter egos that are conscious, culpable, intentional, that gave rise and are directed toward a specific creditor. The purpose of the California alter ego doctrine is not to permit, you know, any creditor to pierce the corporate veil. The circumstances of an unhappy creditor are recognized by this Court and California courts as being insufficient for holding the inequitable result prong of the alter ego test as met. Here's the sticking point for me on the case. We've got, I assume that the underlying company, the RAJMP, satisfied most of the tax liability. And the reason we're now going after and disputing the TRKSS and the condos is that that's the excess that wasn't satisfied by the company. Is that my, is that right? Is that what's going on here? That is not the case. Oh, so. When RAJMP ceased operations in 2007. Right. The IRS did seize or took the remaining assets and RAJMP was only able to pay a couple million dollars towards the tax liability. There is a significant outstanding amount of penalties and interest beyond the tax. Richard Evans is being held liable by the IRS under a trust fund recovery penalty theory. But beyond that, you know, penalties and interest along with the potential tax. So there's still money outstanding. There's still money outstanding. I got you. That is correct. But the reason the IRS is going after the condos and after TRKSS is the failure to satisfy the complete amount by the company itself. Yes. Okay. Now, there are two amounts. They go after, the IRS goes after TRKSS for about $1.3 million. Now, it strikes me that if we're talking the inequitable result, the IRS makes a fairly good argument that it buries in a footnote. But it seems to me a fairly good argument that Evans is the CFO of both companies. So that if we're trying to figure out inequitable result of going after TRKSS, well, if the malefactor, Mr. Evans, is the CFO of both companies, I don't see anything inequitable about going after the other company. More problematic, it seems to me, is the $344,000 roughly that comes out of the condos, because that's coming out of the personal property of Joan and Robert. What about the following argument? We know that the, I'm having trouble with all these initials, the RAJMP Company pays a lot of what the district court found to be personal expenses of the Polites, of the children of Robert and of Joan. It seems to me fairly far in excess of $344,000. Why is it inequitable to go after $344,000 from the Polites, given the amount of money that was given to them or was taken by them out of the company for what looked like personal expenses? Why is that inequitable? Okay. I appreciate that question quite a bit. And I did want to draw back to one of the previous questions you asked, and I apologize. Take as much time as you need to get out, because I asked you a lot of things. Oh, no problem. So a footnote, too, on page 2 of the court's orders and findings, it did hold that Robert and Joan Polite and TRKSS had no knowledge of tax liability. So using that, to the extent that even if it can be said that Robert, Joan, or TRKSS personally benefited from use of RAJMP's funds, which is a fact disputed in our briefs, and I don't want to discuss those facts right now, even if it can be said that is not the conduct that is sufficient and required to meet the second prong of the alter ego test. Such conduct was completely done under innocent assumptions or beliefs based on the conduct of Richard Evans. His fraud, the CFO's fraud, is the one that created the IRS tax liability. Not Robert, Joan, or TRKSS's. They had no fraud with respect to the IRS. They didn't even know the IRS was a creditor. They were led at all times to believe they were. How can you make that argument with regard to TRKSS if Evans is the CFO of that company? I mean, to say that TRKSS doesn't know, I mean, you have to attach that to somebody or some group of somebodies because the corporation itself can't have knowledge independent of its persons. Okay, yeah, I understand. So that is one fact that we did dispute at trial, and we're not conceding this on appeal, that whether Richard Evans' conduct, which is fraudulent, was imputed to the corporation. Under California law, fraudulent conduct is not necessarily imputed to a corporation if it's not done. But even if that's the case, it's not imputed to TRKSS. He was not acting on TRKSS's behalf with respect to the unpaid employment taxes. Furthermore, it could even be said that Robert and Joan or any shareholder's innocence could be imputed to the corporation as well or TRKSS. So the fact that TRKSS, if there's even a knowledge of TRKSS with respect to amounts it may have received, that's still insufficient to meet the alter ego second prong, which requires a conscious culpable act by that entity. And that's what's missing here. You know, in Robert and Joan Fleet and more so, there's no conscious culpable act when they may have received funds from the entities or... Here's the concern that I have. Let's start from the proposition that I don't see any evidence of fraud on the part of the police or TRKSS. But the cases also refer to piercing the corporate veil in order to prevent injustice and because of an abuse of corporate form. Now, the abuse of a corporate form may take the form of some kind of fraud, some kind of creating a dummy corporation, doing something, transferring funds out in order to avoid liability and so on. But the concern that I have about the potential abuse of a corporate form here is that it appears to be a pretty loose operation. There just seems to be some we just seem to be shuffling money around between the family and the two family-owned corporations here. And the clear lines don't seem to be observed in part because it looks like it's just a closely held corporation. It's just a family corporation without an obligation to outside shareholders and so it doesn't really seem to matter. They seem to be taking it out of one pocket and putting it in another. And to the extent that the governments did spin that story and the district court bought it, we'd have disputed a lot of those facts. For instance, the fact that Robert and Joan Fleet reported rents from RAJ&P in the amount of $4.5 million over the years and did not receive those. And they reported and paid taxes on those, as a matter of fact. So when they did, a lot of that money could be characterized as that. But regardless, those amounts that might have been done or shuffled, as you said, Your Honor, back and forth between corporations or entities, still have nothing to do with the fraud and what gave rise to the inequitable results. Those are not conscious acts, not culpable acts. But you keep talking about the fraud, and it seems that's clear. The fraud was not known. That wasn't dealt with. But the issues really that came up before the trial court and upon which findings were made are with respect to the lack of formalities. And one of the findings, for example, is Mr. Polite acknowledges using RAJ&P funds to finance real estate purchases by RAJ&P of Nevada. As a result, in 2004 alone, RAJ&P of Nevada was indebted in excess of $600,000. When RAJ&P dissolved in 2005, RAJ&P of Nevada owed RAJ&P a balance of $643,000. And there are other findings with respect to the lack of recovery of loans that were made to the Polites. And so there are findings in here about conscious or decision-making on the part of Robert and Joan that resulted in the corporation not having the funds in order to pay the taxes because there were all these loans and other payments that were not made in order to make solvent the corporation. So there is evidence, is there not, in the record to support the findings? No, Your Honor. I mean, I would dispute that characterization of the evidence. Furthermore, that evidence, you know, evidence that money might have come out of the corporation pertains to the first prong of the alter ego analysis. And the Messler V. Bragg Management Company, the Supreme Court of California, distinctly set forth two separate prongs to the alter ego analysis. And by using factors that may go in issues and facts that go to the first prong to satisfy the second prong, it conflates the two theories, and that's what the district court did. It conflates the two prongs, thereby rendering a two-prong analysis completely superfluous. The California alter ego doctrine does not stand for that. Furthermore, doing so creates a per se rule that any corporation who does not have strict corporate formalities, and this would be stretching the alter ego doctrine beyond all recognizable limits currently, it's a per se or strict liability rule that any corporation with imperfect formalities can be held liable where there's an unpaid creditor, such as the government or anyone else. But we know that the IRS recognizes that you can look to the financial books and look at the debits and credits and find out from the ledgers and so forth whether or not they're actually loans without having to have promissory notes or lease payments where there's no written lease. That's clearly available. But what distinguishes that and what the government's position is here is that there was a total lack of the corporation making good on those amounts that were owed to it by the police. Well, I appreciate that because that's one remedy that the IRS does have available for it. The alter ego remedy is only to be used in extreme sparingly circumstances. It's only in exceptional circumstances. And the IRS and government did have alternative ways they could have gone after, and they've gone after Richard Evans, for example. There are other fraudulent transfer theories, or they could collect, you know, they could seek to step into the shoes of R.H.N.P., the taxpayer, and seek to collect its receivables. And the government has not exercised any of those. Instead, they're going after individuals and another entity who acted completely innocently with respect to what their transactions under all times, having no knowledge of these taxes. I see I'm short on time, so I would like to turn over the podium to Rob McGuire. And I appreciate your question. Sotomayor, I didn't realize you were splitting time. Yes. How much time were you trying to save for him? I was trying to save a couple minutes and six minutes for rebuttal. Why don't we give him two minutes and then we will save you two minutes for rebuttal. Thank you, Your Honor. It turns out I'm just as lenient with lawyers as with law students. Thank you, Your Honor. Thank you, Your Honor. My name is Robert McGuire, and I represent TRKSS. And for purposes of this argument, Mrs. Polite, Joan Polite, I really just have two points, one for each of these separate appellants. And each of them independently justify the reversal of the district court's judgment with respect to those appellants. First, the district court committed an error of law when it analyzed Joan Polite inseparably from Robert Polite. Under the alter-ego analysis, the inquiry is supposed to be individualized. And what the district court essentially did is it lumped together Joan and Robert Polite and analyzed them as though they were a single, you know, a single person to be held liable. I'm not sure how relevant this is. Is Colorado a community property State? California? No, it's Colorado. Colorado. You know, Your Honor, I don't think it is, no. You don't think? Oh, you just don't know? I don't. I don't know. Okay. I'm not sure it's relevant. Okay. Yeah. I should know. I'm married and I live there, but I don't. You better find out. I better. So if you look at this Court's decision in First Mark, it very clearly holds that individual the individualized analysis is required. In First Mark, a wife who passively enjoyed the benefits of a corporation was held not to be the alter ego where the husband was, and it was largely due in part to the requirement that the analysis be conducted on an individualized basis. So for that reason alone, in conjunction with what the record shows of Joan's involvement, which was negligible, she should not be subject to the alter ego determination. Second, with respect to TRKSS, as indicated in the brief, the district court committed the error of law of not looking at ownership first. And ownership under the California alter ego doctrine is a prerequisite to even looking at the first factor, the first prong factors that go to unity of interest in ownership. And so because there was no ownership directly between R.I.J.M.P. and TRKSS, it was an error of law to hold that TRKSS was the alter ego. And if we can get past the first prong under Messler and we're now to the second prong of inequitable result, why is it not sat — why is not that prong satisfied by the fact that Mr. Evans was the CFO for both corporations and acting as the CFO for TRKSS, he engaged in precisely the same fraud as he engaged in with respect to the other company, R.I.J.M.P.? I think — I think the reason is simply one of fairness, because the district court certainly made a lot of adverse factual findings with respect to my clients, but the one finding that it made that was very favorable to my clients, which is, as Mrs. Pleth already referred to, is that TRKSS didn't know. And so — I'm sorry. Who didn't know? TRKSS, as well as the police individually did not know. Well, what do you mean it didn't know? Their CFO certainly did, because he was doing it. That's true, but — So who's they? Well, you know, each of the individual shareholders, the police, did not — did not know about the fraud — the liabilities. Yeah, but on that — but on that theory, J.M. — R.I.J.M.P. shouldn't have paid absent proof of knowledge on the part of the shareholders. Yes. I think the Court did find that there was knowledge — I mean, obviously, R.I.J.M.P. wasn't present in the case below. So the case below was the three people who were held liable under the — But it's not normal to say that the corporation is free of liability if the shareholders don't know of wrongdoing by the corporate officers. Well, I think maybe what I'm doing wrong here is I'm conflating knowledge with sort of the larger principle, which is that you have to be an actor in the wrongdoing in order to be held liable under the alter ego theory. Well, and that's precisely the point of my question. Yes. Evans is CFO of both, and he does the same fraud with respect to both. So why is it inequitable to require out of TKSS a payment of $1,300,000 when we have the same wrongdoer in both companies? Well, because I think his role — the fraud was committed in his role as CFO of R.I.J.M.P., and he was acting on behalf of R.I.J.M.P. when he committed the fraud as its CFO. But TRKSS is a separate party for whom he was performing the service of CFO, and I guess since the district court didn't impute his knowledge to T. He's not changing offices during the day, right? He's in the same office. He's answering the same phones? Presumably, yes. He is. They are separate operations, however. They have different retail stores. Well, you're right. They're separate retail operations, but the corporate operations aren't that separate if the CFO is sitting in the same office all day and answering the phones for both corporations. Well, that is correct, but it seems to me that if you're — in a way, by looking through Richard Evans before you justify piercing the veil, it puts the cart of piercing the veil before the horse of satisfying the factors that justify piercing the veil. I mean, Richard Evans as an individual performed roles for two different employers, essentially. Can I take you back to Joan Polito, your first point, for just a minute? What makes her separate here? Does she own identifiable shares of stocks separate from the others? She is a shareholder in REJMP. She and Mr. Polito are both members of TRKSS, but she is an individual shareholder in REJMP. And how many shares does she hold? I would have to check. I know collectively they hold, I believe, 50. That's the problem. Collectively, we've got a pretty good idea of what they hold. Does she hold shares in her own name that are separate from her husband's shares? I will have to look and give you that answer on rebuttal. If they hold them collectively, why would you have to analyze her as a separate entity? Well, because her – she as an individual has an interest that may be undivided with her husband, but the mere possessory interest in equity isn't sufficient to pierce the veil with respect to her. There have to be these other factors. And one of them is that she had – specifically under the second prong, which is really where we're focusing. Under the second prong, she has to have done some – been some kind of actor. Right. But if they hold the shares collectively, and her shares are therefore not indistinguishable from his, why do we have to make that separate inquiry? I'm not sure that they do – I'm not sure that they jointly hold the shares. I just don't know that. Okay. Okay. Thank you. That's here from the government, and we've taken you over time. We'll give you a little chance to go back. Good morning. May it please the Court. Randolph Hutter for the United States. I'd first like to draw the Court's attention to footnote 2 in record excerpts, page 3, where it specifically says the Court did find plaintiffs had no knowledge of this liability. I would agree with Judge Bybee that that goes too far as a legal matter with regard to TRKSS. But there's no question that the judge found that the police did not know that Mr. Evans was not paying the taxes. We would still contend, of course, that they had a responsibility to know, that they had a responsibility to see what was going on financially in this company. I got it. Thank you. I just wanted to make sure that, yes, the evidence did come in in that regard, and the evidence that was kept out, as we point out on page 55 of our brief, the district court made a big deal of saying, you can't bring in evidence saying what you did after you found out in order to make yourself look good. I'm not going to hear that. So that's what the district court kept out. I got you. That's very helpful. Very good. Very good. I would also like to stress that in Mesler, which is the Supreme Court holding on the factors of alter ego test, the second requirement, the second prong, says that if the acts are treated as those of the corporation alone, an inequitable result will follow. There's no mention of knowledge in the factors, and there's no mention of some sort of conscious culpable act. Yes, you have to be an actor in disregarding the corporate form, but there's no mention here that you have to be complicit and understand what's going on and basically acting fraudulent. So that's not part of the test. It is will an inequitable result occur if the alter ego doctrine is not applied, and I think that absolutely there is the inequitable result shown here by the facts, and that is that a government tax liability of a great magnitude would not be casually disregarded. They were not establishing agreements and authorizations and authorizations, for example, for the police to extensively use the corporate funds for their personal expenses. There are two or three leases in the record, but not leases for all of the properties in question. Was there any kind of authorization, written authorization by the corporation, for example, that they could pay the police through some other way instead of official formal rents? No, there was not. The IRS fully recognizes that if the accounting is properly rendered, that those formalities are not very important. In fact, that as long as it's showing rent where rent is to be paid, or in this case, I think mortgage payments were made as representing rent and so forth, so the IRS found that there was lots of supporting accounting for these arrangements, did they not, without finding underlying written instruments? Your Honor, on paper, they may have put rent in a particular column, but that doesn't disguise the fact that that's not the way they paid it, and there was no written authorization, no authorization of any sort, except for Mr. Polite to call up, I suppose, and say, hey, I want to start taking my rent by checks that I'm going to write personally to all these other, all these companies. There was no corporate recognition that this would be paid out in some way other than rent. It looked, in other words, it looked one way on paper and it didn't play out that way. So we would not recognize that those, the way it's characterized on paper satisfies the corporate formality. It doesn't. Income tax paid on the rent that was paid in the form of mortgage payments being made, was there not? Mortgage payments were paid by the corporation, but also Mr. Polite testified that he paid himself the rent by writing checks for personal expenses, such as all the house remodeling done and even laundry and dental expenses and property taxes on that. And he reported that on his income. Yes, he did. But that doesn't disregard the fact that the money was flowing free and fast and loose. And also you need authorization. If our AJMP is going to make investments in other properties and corporations owned by the police that have nothing whatever to do with these California businesses, I would say that you absolutely need to have at least some sort of corporate paper sign saying the president authorizes this investment to be made. But that wasn't done. It was more like, just write me a check for my other business and here we go. Write me a check for the time shares in Hawaii and here we go. Write me a check for the property taxes that the company in Nevada that I own separately owes in Nevada. I think you need some sort of authorization for this kind of behavior. Counselor, is there anything illegal or untoward in that kind of behavior? I don't know that there's anything illegal about it. There's nothing here alleged. Should California's corporate regulators have been concerned about what was going on with this? Or is this just simply a matter of saying, look, this was a really loosely run family organization that had some loose corporate structure here and money was just flowing freely among these entities. That gets us around sort of the question as to whether there was any fraud. We can simply say, no, there wasn't any fraud. The family was not behaving fraudulently, but they were treating these corporations as though it was the family piggy bank and it probably was. I mean, I don't think anybody should say that they were behaving inappropriately because they were doing so. The question is whether they may still be liable for the taxes. Right. The only injured party here appears to be the United States. I can't see in the record anywhere where there are other creditors that weren't paid. As they say, the state of California got its taxes. I'm not sure that the state of California shouldn't certainly I don't think would have any interest in looking into this case. I suppose people can. Ordinarily, the only people who might be concerned here would be stockholders. Absolutely. That was all. And it was all within the stockholders interest for things to work exactly like this, but it was negligent behavior. Nonetheless, it was negligent because for seven years, nobody wanted any evidence. Nobody wanted to see a check that the United States was paid one penny in employment taxes when it was supposed to be handling employment taxes, not just for RA, J and P, but for two companies. And all of these taxes multiply year after year. A business owner has got to know that's his most important thing to do. And for him not to do it. And for the shareholders to go along and not, not, not check. It's just, it's not criminal, but it's negligent. Does the success of your argument depend upon the new or should have known? Oh, no, no, it doesn't. Because you're now arguing should have known, but we are arguing, but our best case is the wolf case. In the wolf case, the court found that because there was a unity of interest and ownership, because there was commingling of funds, and because there was a lack of corporate formalities being followed, those three things, the court said, quote, overwhelmingly sufficient to support the alter ego doctrine application. It didn't need any kind of known, should have known anything else, but it found that the people were acting, treating the corporation as an incorporated pocketbook. Let's go back to the second prong, Messler. Of course. And the court concluded that the failure to pay U.S. taxes was an inequitable result. Yes. If, first of all, do you think that is sufficient? You're defending that, saying that alone can establish that second prong. But if the court here finds that that does not meet the prong, are there findings here that the trial court made that this court could still find an inequitable result? Or if the court finds that this second prong has not been met, does it remand? To answer the first question, I cannot defend and say that standing alone, failure, if you have two prongs, and one is unity of interest and objective, and the second is you didn't pay your government taxes, no, that would not be sufficient. It needs the factual underpinnings that the district court did supply of the commingling of funds and the failure to recognize the corporate formalities. So not paying the taxes all by itself, no, that is not sufficient. But it seems that the trial court hung its hat on that failure to pay the government taxes to meet the second prong. But at the same time, if that were true, it wouldn't have gone to all the trouble to make all those findings regarding how the commingling of funds and the corporate formalities were not adhered to. Well, the plates would indicate that's all part of first prong, establishing first prong. Well, I don't see how the first prong is very easily satisfied simply by saying that the short shareholders were the family, and the police controlled all the business. That's the first prong, because that's unity of interest and ownership. That's what the first prong gets to. The first prong doesn't get to commingling of funds. It doesn't get to failure to recognize the corporate formalities and the way the business was transacted. And those are the findings that the district court made and that had to be made in order to prove that there was an inequitable result, because the inequitable result is not just that the government was not paid its taxes. It is that this large debt would go unpaid because the police are allowed to hide behind, to stay behind the corporate facade. And yet, for all other purposes, that corporate facade meant nothing. That's the inequitable result. Let me ask you this. The Messler case talks about inequitable result and doesn't talk about bad faith. The California courts of appeal that have followed Messler are very clear in saying that fraud is not required to find equitable result. But I'd find, for example, in Hub City Solid Waste Service's language that says, the alter ego doctrine does not guard every unsatisfied credit of a corporation, but instead afford protection where some conduct amounting to bad faith makes it inequitable. Now, do you need to satisfy bad faith? No, Your Honor. Why not? May I ask first, is that a court of appeals? That's a California court of appeal. Right. And my first answer is because California Supreme Court has never said that. And the California courts of appeals are getting that into opinions here and there, where it's not supported by anything the California Supreme Court has done. Number two, this court. Let me respond to that first. Messler is a fairly old case written by Justice Mosk, a very distinguished justice of the court, but it's a fairly old case. And California makes a lot of law in its courts of appeal, particularly when we've got an old Supreme Court case and we have no further statement by the California Supreme Court. Well, as I did before I came to argue this case, I looked on Westlaw to see more recent cases regarding alter ego doctrine. They do not require bad faith and fraud. The majority of the opinions do not do so. Even the majority of the appellate opinions do not do so. We cited one case in our brief, for instance, MISIK, M-I-S-I-K. That's a court ---- I'm reading MISIK, which does not mention bad faith. Exactly. Exactly. And so I would say that the statements by this Court in the Orloff case and the RRX case are still true today. And they say that bad faith is not a factor in the second prong of the California legal test. Well, then, if you have the courts of appeal going sort of different directions on this, was there any consideration at the trial court about certifying a question to the California Supreme Court on getting some direction here? No. The district court in this case found that the issue was decided. It looked at Resnick, Gordon v. Aztec Brewing, and Messler and decided the case is decided. There's no fraud or bad faith required. It was clear fraud is not required. The issue is whether or not something, conduct amounting to bad faith. Now, what we've got here is conduct amounting to bad faith. That looks at the result. That looks at what would happen. In other words, the big debt being paid with all of the formalities being ignored and the commingling funds. Would that effectively be something resembling something basically that's bad faith? It is bad faith. I don't think it's part of the test, though. Well, I don't know if it's bad faith. With respect to TKSS, if I've got the initials right, it seems to me it's enough for me. I cannot speak for my colleagues. It's enough for me that Evans is the CFO of both, is operating for both, and it's not inequitable to ask the company that he is CFO of to satisfy in the sense of commingling. The harder question for me is the condos. I realize that's the smaller amount. I mean, they'd much prefer to save the $1.3 million compared to the $344 million, but the harder one is the $344 million for the condos. I'm looking at, and the only way I get there is to sort of affirm on any ground basis. I don't think the district court was right to say simply because it's taxes that satisfies inequitable. I think you need to find more. So I'm looking to see if there is more. And it strikes me that at least we have the following, and maybe you want to address this in rebuttal, that the companies are showing an artificial profit because of the failure to pay these taxes, and during this period the police are taking money out for their personal expenses, which strikes me as at least enough to show that it's at least somewhat inequitable that they should now say, well, listen, we don't have to pay anything. Even though the company was making an artificial profit or unwarranted profit because of the failure to pay the taxes, and we were taking money out for our personal reasons. That's the only way I can get there. Indeed, Your Honor. There's no indication that the police were taking any profit into consideration. They were taking money out of the corporation because it was their due. They said this is our money, and why else would they send money from RJ&P to a totally separate company altogether? The findings of the fact that the district court made, though, with regard to the police behavior vis-a-vis the funds and the formalities of RJ&P completely support a finding of an inequitable result because, as I said, the important thing is that the inequitable result is not just that $8 or $9 million in federal taxes doesn't get paid. It's that the police are allowed to hide behind a facade of a corporate wall that otherwise was as porous as a piece of paper that they did not recognize for any other purpose. That's the inequitable result, and the district court's findings definitely support that conclusion. And we have pointed out if we have to term it, support, affirm on a different ground, so be it. I don't think it is because the ground is alter ego, and the inequitable result is still supported by the factual findings made by the district court here. And so we're asking for nothing but what the district court concluded, basically. Just as an aside, like Judge Fletcher inquired in another case here, it doesn't have quite germane, but I must say I don't understand or does not seem to be any evidence that there was the personal responsibility theory pursued here where you had check writing authority, had all those various elements that may have been met in order to hold the officers responsible. Your Honor, that's separate litigation. It isn't litigation. Yes, Your Honor. I also want to point out just very quickly that when it comes to just looking at the condos itself, that's more the nominee theory, whereas the alter ego theory is more broad and doesn't have to focus on just the condos itself. But I don't know that that makes a whole lot of difference. Thank you, Your Honor. If you have no other questions, thank you very much. Let's put two minutes on the clock for rebuttal. Thank you, Your Honor. Just first, a factual issue. I checked. Mrs. Joan Pleat owned 24.4 percent of the share certificates in her own name. And second, Colorado is not a community property state. Okay. I'd like to pick up where Mr. Hutter left off. The alter ego theory goes well beyond nominee liability. So the government is presently trying to take everything these people own on the basis of this fraud that they knew nothing about when it was happening. And the justification under the second prong here is that they were casual about the way they did business. But what that essentially is asking this court to do is take the second prong of Messler and turn it into a strict liability test, whereby anybody who doesn't dot their I's and cross their T's is essentially exposed to unending liability for the wrongdoing of someone else. And that does not fit within an equitable doctrine, which is what the authority What about the facts of this case rather than hypothetical of unending liability? What about the facts of this case, where for a period of several years, was it seven, we've got fraud committed by Mr. Evans, enabling JM, whatever it is, P, to show a larger profit than it is otherwise making, and we have the family taking out for its own personal purposes a fair amount of money, I think in excess of $344,000, and the only amount of money that's at stake with respect to the individuals is $344,000. I'm not talking about unlimited liability. I'm talking about the inequitable result of $344,000. Why is that inequitable? Well, if you were just to limit it to particular assets, I think under a nominee theory, it would be possible to go after just the $344,000. But I'm not talking nominee theory. I'm talking about why is it unfair or inequitable to go after $344,000 when the company is making artificially high profits during that period and more than $344,000 is taken out for personal use of family members during that period? Right. Well, okay, so hypothetically, assuming that that's the only money that the alter ego theory would reach, which it isn't, if we just looked at that portion of money, it's not inequitable because, first of all, the police paid tax on the money they took out of the company because they thought it was income. And so they did pay tax to the government. And that gets to the larger question of all these second-prong cases. There has to be something that shows that you are, as Mr. Hutter said, abuse of the corporate form. The Wolf case talks about evasion of a duty to pay taxes. All of these terms involve some degree of intentionality, some degree of purpose. And the police did not use this corporation, which was profitable, as a valid corporation for four years before Mr. Evans started his fraud. They did not create this corporation as a sham in order to defraud the government. They thought this was a functioning corporation. And at some point it turned bad. And so the police wound up now potentially at risk for everything that they own. Okay. Thank you. Thank you both sides for their helpful argument. Ms. Polite, you can go back to Colorado and tell the family members they've got a good lawyer. Okay. Polite v. United States now submitted for decision. And that completes our argument for this morning. Thank you.
judges: Settle, Fletcher, Bybee